OPINION OF THE COURT
Kristin Booth Glen, J.
These three CPLR article 78 proceedings are from the same applications and order of the New York State Division of Housing and Community Renewal (DHCR) and involve the applications for major capital improvement (MCI) increases by Ansonia Associates (hereinafter the Owner) for the installation of a trash compactor, and work done on the heating, elevator, and electrical systems, and the waterproofing and pointing of the exterior of the building. The tenants are represented by two groups which each brought separate proceedings: the Ansonia Residents’ Association (hereinafter the Association) and by Thomas Soja as president of the Ansonia Tenants Coalition (hereinafter the Coalition).[1]
After determinations by the Local Rent Administrator of the MCI applications, the parties filed petitions for administrative review (PARs) concerning portions of each of the decisions. After the PARs were completed, the Commissioner of the DHCR disallowed the increases granted for the electrical system work and the waterproofing and pointing, but allowed some increases for work on the elevator and heating systems and for the installation of the garbage compactor.
The Association filed its proceeding on March 24, 1987, and it was assigned to . me. The Coalition’s proceeding entered the Individual Assignment System one day later, on March 25, 1987, and was initially assigned to the Honorable Jawn A. Sandifer. On April 1, 1987, a third related proceeding was commenced by the Owner and was assigned to Justice Kirschenbaum. On April 28, 1987, the Coalition’s proceeding was referred to me, Justice Sandifer being assigned to the Appellate Term.
Subsequently, by motion returnable October 27, 1987, before *226 Justice Kirschenbaum, the DHCR moved to consolidate all three proceedings before one Judge. The Owner supported the motion; the Association opposed it. In his November 6, 1987 decision and order, Justice Kirschenbaum granted the motion, consolidated the proceedings and referred the three of them to me, before whom 2 of the 3 had already been pending, and to whom the first of the three proceedings to be assigned to any Judge, the Association’s, had been referred.
In its petition, the Owner seeks to reverse Commissioner’s disallowance of the increases for the. electrical work and waterproofing, and seeks to increase the percentages allowed for the trash compactor, and heating and elevator work. The Tenants’ petitions challenge those parts of the DHCR’s order which granted the Owner any increases for the trash compactor installation and work done on the elevator and heating systems. The Tenants also argue on an important and previously unresolved issue,[2] that the DHCR failed to amortize the MCI increases as required by the Rent Stabilization Law (Administrative Code of City of New York § 26-501 et seq.).
After full consideration of the arguments raised by the Owners and the Tenants, those portions of DHCR’s determination permitting a portion of the MCI increases sought by the Owner for. the installation of the trash compactor and the heating and elevator work done, and those portions rejecting increases for the electrical, waterproofing and pointing work, are found to have a rational basis in the record and will not, therefore, be set aside by this court. (See, Matter of Oriental Blvd. Co. v New York City Conciliation & Appeals Bd., 92 AD2d 470 [1st Dept], affd 60 NY2d 633 [1983]; Matter of Korein v Conciliation & Appeals Bd., 84 AD2d 724 [1st Dept 1981], affd 57 NY2d 938 [1982].) DHCR’s finding that the allowable increases should be permanently incorporated into the base rent of each unit, however, cannot be sustained.
The Tenants have repeátedly argued that any MCI increases imposed must be removed from their rents after the Owner’s costs are recouped. DHCR has vigorously opposed this position, permitting rent increases for major capital improvements to be merged into the stabilized base rent of each apartment. As a consequence, tenants pay an increased rent *227 forever, and the landlord continues to extract a profit long after it has been fully reimbursed for the cost of the investment. This policy violates both the specific requirements of the Rent Stabilization Law and its general purpose. The Rent Stabilization Law mandates that: "[T]he cost [of a major capital improvements] is to be amortized over a five-year period, based upon cash purchase price exclusive of interest or service charges.” (Administrative Code of City of New York § 26-511 [c] [6] [b].) The intent of the Legislature, then, can be found in the word "amortized”.
Black’s Law Dictionary defines "amortization” as "A reduction in a debt * * * by periodic payments covering interest and part of principal * * *. The operation of paying off * * * [an] indebtedness * * * by installments * * *. An 'amortization plan’ for the payment of an indebtedness is one where there are partial payments of the principal, and accrued interest, at stated periods for a definite time, at the expiration of which the entire indebtedness will be extinguished. ” (Black’s Law Dictionary 76 [5th ed 1979]; emphasis supplied.)
A debt which is amortized thus has three elements: (1) there must be installment payments; (2) these payments must last a definite time; and (3) at the conclusion of the payments the debt must be extinguished. "[Statutory language is to be read in accordance with its ordinary and accepted meaning, unless the Legislature by definition or from the rest of the context of the statute provides a special meaning.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 94.) Since the Legislature nowhere provides a separate definition of "amortize”, the word as used in the Rent Stabilization Law must retain its ordinary and accepted meaning. (Id.) The absence from the Commissioner’s decision, then, of any reference to a time when the MCI increases will be removed from the Tenants’ rents, that is, when the Owner’s costs will have been amortized, violates the Rent Stabilization Law.
The DHCR’s practice likewise contravenes the purpose of the Rent Stabilization Law to "prevent exactions of unjust, unreasonable and oppressive rents and rental agreements and to forestall profiteering, speculation and other disruptive practices”. (Administrative Code § 26-501.) Pursuant to the scheme created by the Rent Stabilization Law, the Rent Guidelines Board establishes annual rent adjustments or "fair rent increases” designed to account for most general changes in the cost of maintaining rental housing. (See, Administrative Code § 26-510 [b].) Rent increases for major capital improvements *228 are imposed in addition to fair rent increases and should therefore be tailored to serving their narrow purpose: reimbursing the landlord for costs actually incurred.
Other sections of the Rent Stabilization Law provide further support for this principle. First, the law states that: "A code shall not be adopted hereunder unless it appears * * * that such code: (1) provides safeguards against unreasonably high rent increases and, in general, protects tenants and the public interest”. (Administrative Code § 26-511 [c].) Here, by permitting landlords to recoup their investments many times over by imposing permanent rent increases, DHCR is both allowing unreasonably high rent increases and failing to protect the affected tenants. Second, any rent stabilization code must include: "guidelines with respect to such additional rent and related matters as, for example, security deposits, advanced rental payments, the use of escalator clauses in leases and provision for increase in rentals for garages and other ancillary facilities, so as to insure that the level of fair rent increase established under this law will not be subverted and made ineffective”. (Administrative Code § 26-511 [c] [5]; emphasis added.) Yet DHCR has fostered subversion of the Rent Stabilization Law by authorizing MCI increases far in excess of the fair rent increases to be collected perpetually.
Even if the Rent Stabilization Law were less clear with regard to the temporary nature of the major capital improvement rent increases, basic rules of statutory construction require that the interpretation offered by the Association and the Coalition be adopted. Where two constructions of a statute are possible, "[T]he rule is that the construction to be adopted is the one which will not cause objectionable results, or cause inconvenience, hardship, injustice, mischief, or absurdity. The Legislature is presumed to have intended that good will result from its laws, and a bad result suggests a wrong interpretation.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 141.)
The potential windfall from MCI increases has not escaped the notice of other landlords. An advertisement which appeared in the Apartment Law Insider stated in part that
"Many sophisticated owners overlook an important rent increase possibility. The major capital improvement (MCI) rent increase. It’s your opportunity to pass on to tenants the cost of improvements you make to the building.
"MCI increases are particularly attractive because the rent increase is permanent. It must continue to be paid even after *229 you have fully recouped the cost of the improvement.” (Apartment Law Insider, Dec. 1983.)
Surely, a Legislature that sought to curtail profiteering by landlords intended no such result.
Finally, an interpretation of the Rent Stabilization Law that permits MCI increases to last forever encourages landlords to permit buildings to deteriorate, a result contrary to public policy. Since MCI rent increases as they are now imposed permanently increase the rent rolls and since landlords recover far more than the actual cost of any improvements, landlords have significant incentive to neglect normal maintenance, upkeep, and repair of their buildings to the point that major capital improvements are required. This, too, is a consequence too absurd for the Legislature to have countenanced.
Nevertheless, DHCR contends that its position has been upheld in two cases, Matter of Laden v Conciliation & Appeals Bd. (Sup Ct, NY County, Jan. 12, 1977, Sutton, J.) and Matter of Smith v Conciliation & Appeals Bd. (Sup Ct, NY County, Dec. 2 1975, Starke, J.). The Laden case contains no independent analysis, but merely cites the Smith case for the proposition that MCI increases may be collected in perpetuity. However, in Smith the court held only that the petitioners were barred by the Statute of Limitations. Thus, neither the Laden case nor the Smith case provides any analysis in support of DHCR’s position.
For all these reasons, I find as a matter of law that MCI increases must be amortized so as to be removed from the stabilized base rent after the landlord’s costs are recouped.
Accordingly, the DHCR is directed to modify its decision to provide for the removal of the MCI increases at the conclusion of the amortization period.

. Where references include both the Association and the Coalition, the two groups will be combined under the term Tenants.

. The issue of amortization has been raised, but not finally resolved, in prior decisions of this court. (See, e.g., Ansonia Assocs. v State Div. of Hous. & Community Renewal, NYLJ, Mar. 5, 1986, at 6, col 4 [Sup Ct, NY County 19861.)